UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ABIGAIL SANDERS, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 1:24-CV-322 JD |

**OPINION AND ORDER**

Plaintiff Abigail Sanders appeals the denial of her claims for disability insurance benefits under Title II and Title XVI of the Social Security Act. For the reasons below, the Court will remand this case to the Agency for additional consideration.

**A.  Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the

claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

B.  **Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

See *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**C. The ALJ's Decision**

Ms. Sanders filed a Title II and Title XVI application for disability benefits alleging disability beginning on March 17, 2022. In finding that Ms. Sanders wasn't disabled, the ALJ employed the customary five-step analysis. At step two, she found that Ms. Sanders suffered from the following severe impairments: "borderline personality disorder; major depressive disorder; anxiety disorder; post-traumatic stress disorder; cervical spondylosis with disk bulge and radiculitis; degenerative disc disease of the lumbar spine, with radiculopathy; and sacroiliac osteoarthritis." (R. at 21.) At step three, the ALJ concluded that Ms. Sanders "does not have an impairment or impairments or combination of impairments that meets or medically equals the severity of [a Listing]." (R. at 22.)

In her decision, the ALJ recounted Ms. Sanders's testimony at the hearing. The ALJ noted that Ms. Sanders testified that she could walk no more than one block without needing to rest and was unable to lift more than 20 pounds. (ALJ's Decision, R. at 26.) Ms. Sanders alleged chronic and severe back pain that required her to use a cane and rollator walker. She said she was unable to perform household chores other than light laundry and claimed that treatment modalities had been ineffective in alleviating her physical pain. Ms. Sanders also said that she suffered from severe symptoms of agoraphobia, panic attacks, passive harmful ideation, depressive thinking, intrusive and traumatic memories, and a general inability to handle stress. (*Id.*)

In her decision, the ALJ agreed that Ms. Sanders's medical condition could cause the symptoms she described. Even so, she concluded that her statements about the severity, persistence, and limiting effects of those symptoms were not fully consistent with the medical and other evidence in the record.

Using the "special technique" provided in 20 C.F.R. § 404.1520a,[1] the ALJ evaluated the severity of Ms. Sanders's mental impairments. As relevant to this appeal, the ALJ found that Ms. Sanders suffered moderate limitations in concentration, persistence, and maintaining pace.[2] (R. at 24.)

The ALJ also considered the medical opinions and prior administrative medical findings. She found the opinion of Dr. Shayne Small, a state agency consultant, partially persuasive, specifically regarding Ms. Sanders's ability to stand and walk up to 4 hours during a workday and lift or carry 20 pounds occasionally, and 10 pounds frequently. (ALJ's Decision, R. at 30.) By contrast, the ALJ discounted the more restrictive opinion of the reviewing state agency consultant, Dr. J. Sands. (*Id.*) The ALJ was also persuaded by the opinion of Dr. Emily Krach, who found that Ms. Sanders could stand or walk for at least 2 hours and lift or carry less than 10 pounds frequently and more than 10 pounds occasionally. (*Id*. at 32.)

The ALJ next considered the opinions of state agency psychological consultants Dr. Kari Kennedy and Dr. J. Gange, who concluded that Ms. Sanders's mental impairments were non-severe. The ALJ found these opinions unpersuasive, citing evidence of moderate limitations in mental functioning. (ALJ's Decision, R. at 31.) The ALJ found the opinion of consultative examiner Dr. Mary Kadlec, Psy.D., only somewhat persuasive, noting that while it aligned with

---

[1] "The special technique requires the ALJ to first determine whether a claimant has a medically determinable mental impairment(s). § 404.1520a(b)(1). This is done by evaluating the claimant's 'pertinent symptoms, signs, and laboratory findings.' *Id*. If the claimant has a medically determinable mental impairment, the ALJ must document that finding and rate the degree of function limitation in four broad 'functional areas': activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. § 404.1520a(c)(3)" These areas are known as the 'B criteria.'" *Pepper v. Colvin*, 712 F.3d 351, 365 (7th Cir. 2013) (other citations omitted).

[2] The areas of mental functioning are based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation. A person has a moderate limitation if his mental "functioning . . . independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c). A moderate limitation is greater than a mild limitation, which means that mental function is "slightly" limited, but less than marked limitation, which means that the mental function is "seriously limited." *Id*.

5

some evidence in the record, it lacked specificity in vocationally relevant terms. (*Id.*) Lastly, the ALJ found the opinion of Jennifer Pappert, LMHC, unpersuasive due to inconsistencies with objective evidence concerning Ms. Sanders's mental status. Ms. Pappert had opined that Ms. Sanders "would miss more than three days of work per month, be off task greater than 30% of a workday, and that [Ms. Sanders] should work alone or in physical isolation from others." (*Id.* at 32.)

> The ALJ assessed Ms. Sanders with the RFC
>
> to perform light work[3]. . . except the claimant can stand and walk no more than four hours total, during an eight-hour workday, with normal breaks. The claimant can never climb ladders, ropes, or scaffolds, and never crawl. The claimant can no more than occasionally climb ramps and stairs, stoop, kneel, and crouch. The claimant can no more than occasionally balance, as that term is defined in the Selected Characteristics of Occupations of the Dictionary of Occupational Titles. The claimant can have no more than occasional exposure to hazards, such as unprotected heights and unguarded moving mechanical parts. The claimant can understand, remember, and carry out simple instructions. The claimant can have frequent interaction with coworkers, and supervisors. The claimant can [have] no more than occasional interaction with the public.

(ALJ's Decision, R. at 25.)

The ALJ posed a hypothetical question to the vocational expert ("VE") based on her RFC findings. The VE testified that there were jobs in the national economy in significant numbers that a hypothetical person with Ms. Sanders's RFC could perform: marker, folder in the laundry, and electrical accessories assembler. (R. at 75–76.) The VE also testified that a person "needs to be on task and working at least 85% of the time. If they're consistently off task 20% or more,

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

6

they would be unable to maintain competitive employment." (R. at 77.) In addition, if the person "consistently misses two or three days a month or more than 12 days a year, they'd be unable to maintain competitive employment." (R. at 78.) The ALJ accepted the VE's testimony, ultimately finding that Ms. Sanders was not disabled. (R. at 33–34.)

**D. Discussion**

Ms. Sanders raises four arguments. The first two concern whether the ALJ properly analyzed the supportability and consistency factors when evaluating the opinions of the state agency medical consultants and her treating therapist. A third argument challenges the ALJ's evaluation of Ms. Sanders's testimony. In her final argument, Ms. Sanders contends that the ALJ's mental RFC assessment failed to adequately account for her moderate limitations in concentration, persistence, and pace. This final argument warrants remand for further consideration. Accordingly, the Court addresses only that argument and declines to consider the others, leaving them to be resolved on remand if necessary.

**(1) *Concentration, Persistence, and Pace***

"The RFC finding is central to the outcome of a Social Security case." *Holiday v. O'Malley*, No. 2:23-CV-302, 2024 WL 2860088, at *3 (N.D. Ind. June 5, 2024), "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). 20 C.F.R. § 404.1545(a)(2). ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe" . . . when we assess your residual functional capacity.") "This

7

includes any deficiencies the claimant may have in concentration, persistence, or pace." *Id*. Although the ALJ need not use special terminology, the Court cannot "assume that the VE is apprised of such limitations unless she has independently reviewed the medical record." *Id*.

> Before formulating the RFC, at step two, the ALJ utilizes a special technique called the psychiatric review technique ("PRT") to determine the severity of any mental limitations. 20 C.F.R. § 404.1520a. Using the PRT, the ALJ assesses the claimant's function in four categories: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id*. Although the ALJ's step two analysis is not an RFC finding, SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *4, if an ALJ finds mental impairments at step two, these should then be "reflected as limitations in the RFC finding." *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, . . . the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."); *Paar v. Astrue*, No. 09 C 5169, 2012 U.S. Dist. LEXIS 4948, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012) (finding ALJ erred in not including mild mental limitations he found at step two in his RFC analysis).

*Judy M. v. Kijakazi*, 658 F. Supp. 3d 596, 602 (N.D. Ill. 2023). After all, adequate functional mental capacity is required for competitive employment:

> To do a work-related task, you must be able to understand and remember and apply information required by the task. Similarly, you must be able to concentrate and persist and maintain pace in order to complete the task, and adapt and manage yourself in the workplace. Limitation in any one of these parts (understand or remember or apply; concentrate or persist or maintain pace; adapt or manage oneself) may prevent you from completing a work-related task.

*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(3)(f)(i).

In addition, "an ALJ 'must provide a logical bridge between the evidence and [her] conclusions.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). That's a shorthand term for the requirement "that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir.

2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "In other words, as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). "That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it." *Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). "We review the ALJ's decision holistically to determine whether the ALJ grappled with evidence favorable to the claimant, but we will not reconsider facts, reweigh evidence, or resolve conflicts." *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) (citations omitted).

As relevant to Ms. Sanders's appeal, at step three of the sequential analysis, the ALJ found that Ms. Sanders had moderate limitations in concentration, persistence, and pace.[4] (ALJ's Decision, R. at 24.) Despite this finding, the ALJ's hypothetical question to the VE and the resulting RFC are silent as to these limitations. Instead, in both the RFC and the hypothetical, the ALJ stated that Ms. Sanders could perform light work with various exertional and environmental limitations, and that she "can understand, remember, and carry out simple instructions" and "can have frequent interactions with coworkers and supervisors," but "no more than occasional interaction with the public." (*Id*. at 25.) But neither her ability to carry out simple instructions nor her tolerance for contact with others accounts for her moderate limitations in concentration, persistence, or pace. *See Amanda S. v. O'Malley*, No. 423CV35, 2024 WL 163104, at *4 (S.D.

---

[4] Concentration, persistence, and pace refer "to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that [the claimant] understand[s] and know[s] how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(3).

Ind. Jan. 16, 2024), report and recommendation adopted, No. 423CV35, 2024 WL 420933 (S.D. Ind. Feb. 2, 2024) (finding that an RFC that only provides that claimant "can understand, remember, and carry out simple instructions" does not contain any restrictions related to concentration, persistence, or pace"). Nor does the record suggest that the VE independently reviewed the medical record so as to be clearly aware of Ms. Sanders's limitations. To the extent that Ms. Sanders has moderate limitations in concentration, persistence, and pace, the VE was not informed of them and based her opinion on an incomplete RFC. *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) ("The ALJ's findings about the jobs [the plaintiff] could perform needed to account in a meaningful way for the earlier findings that recognized her difficulties with concentration, completing tasks, and managing stress."); *Crump*, 932 F.3d at 570 ("[T]he ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform." (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). In other words, the VE's testimony regarding available jobs cannot be relied on as substantial evidence.

Still, this may have been a closer case, given that the ALJ did attempt to address Ms. Sanders's moderate limitation in concentration. But she did so without grounding her conclusion in substantial evidence, and her explanation is incomplete. The ALJ wrote that "[c]oncerning mental limitations, objective examinations documenting the claimant with alert and oriented cognition, engaged social interaction skills, calm and pleasant behavior, intact memory and concentration, and intact abstract reasoning, support[] the conclusion that the claimant can understand, remember, and carry out simple instructions." (ALJ's Decision, R. at 29.) Yet with respect to concentration, the ALJ fails to identify any medical records in which concentration was, in fact, found to be intact.

The ALJ made a similar statement when she concluded that "[w]ith regard to concentrating, persisting or maintaining pace, [Ms. Sanders] has a moderate limitation." (*Id*. at 24.) There, she indicated that "objective mental status examinations frequently documented the claimant with . . . intact if not even normal memory and concentration skills . . . ." (*Id*.) (citing to Ex. 4F/19; 7F/3-6; 16F/10; 23F/3, 37).) The ALJ also suggested that consultative examiner Dr. Mary Kadlec "concluded the claimant may only experience 'few problems being able to concentrate and persist on her job responsibilities.'" (*Id.*) (citing Ex. 7F/6).)" But none of the cited exhibits support the ALJ's assertion that Ms. Sanders's concentration was "intact, if not even normal." For example, Exhibit 4F/19 merely states that tramadol was "stopped due to concentration issues." (R. at 428.) Exhibits 16F/10 (R. at 667), 23F/3 (R. at 919), and 23F/9 (R. at 953) do not mention concentration at all. What's more, the ALJ mischaracterized Dr. Kadlec's opinion. In contrast to the ALJ's representation, Dr. Kadlec actually opined that Ms. Sanders "would likely have a few problems being able to concentrate and persist on her job responsibilities." (R. at 529.) She also noted that Ms. Sanders's "ability to sustain her concentration and persistence appeared to be slightly impaired." (*Id.*) At no point did Dr. Kadlec suggest that Ms. Sanders's concentration was "intact, if not even normal."

Elsewhere in her decision, the ALJ recognized that Dr. Kadlec "opined the claimant 'would likely have a few problems being able to concentrate and persist.'" (ALJ's Decision, R. at 31 (citing Ex. 7F/6).) In fact, the ALJ concluded that findings from a longitudinal review of the record were "somewhat consistent with Dr. Kadlec's general conclusion and observations that the claimant may experience limitations in memory, interpersonal activities, and in maintaining concentration and attention." (*Id.*) And lest there be any doubt that the ALJ found Ms. Sanders to be moderately limited in concentration, persistence, and pace, she explicitly rejected the prior

11

administrative findings from state agency psychological consultants who had concluded that Ms. Sanders's mental impairments were non-severe. In doing so, the ALJ noted that the record evidence "is more consistent with the conclusion that the claimant experienced moderate degrees of limitation in her ability to understand and remember information, interact with others, and in her ability to maintain concentration, persistence, and pace." (ALJ's Decision, R. at 31.) In summary, while an ALJ could conclude that, despite certain limitations, a claimant is able to stay on task and work regularly without distractions that interfere with employment, *see Moy v. Bisignano*, 142 F.4th 546, 553 (7th Cir. 2025) (finding that the ALJ failed to build a logical bridge where, despite acknowledging limitations in concentration, persistence, and pace, the ALJ imposed no functional restrictions and did not explain how the claimant could still stay on task and attend work consistently), that did not occur here, leaving a void regarding Ms. Sanders's limitations in concentration.

Adding to the error, the ALJ omitted from both the RFC and the hypothetical question any consideration of Ms. Sanders's moderate limitations in persistence and pace, which are distinct from concentration. To account for these limitations, it's not sufficient for the ALJ to say that Ms. Sanders "can understand, remember, and carry out simple instructions" (ALJ's Decision, R. at 25). She must build a logical bridge that allows the Court to trace the reasoning behind her conclusion that Ms. Sanders can sustain full-time work despite these limitations. *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) ("The ALJ's findings about the jobs [the plaintiff] could perform needed to account in a meaningful way for the earlier findings that recognized her difficulties with concentration, completing tasks, and managing stress."); *Crump*, 932 F.3d at 570 ("[T]he ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform."

(quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). Without such an explanation, the Court cannot conclude with confidence that the RFC is supported by substantial evidence. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (an error is harmless only if the reviewing court can "predict with great confidence what the result of the remand will be").

The ALJ's failure to include in the RFC Ms. Sanders's moderate limitation in concentration, persistence, and pace is significant. The VE testified that being off task more than 15% of a workday or missing work more than once a month would be job-prohibitive. (R. at 77–78.) As a result, it's important to know to what extent, if at all, the ALJ believed Ms. Sanders's limitations in concentration and persistence would interfere with her ability to work gainfully. The VE should have been told about Ms. Sanders's moderate limitations in concentration, persistence, and pace, or the ALJ should have explained why the limitations are inconsequential, so as to be sure that the jobs the VE proposed are ones that Ms. Sanders can actually do.

To be clear, a finding that a claimant suffers moderate limitations in concentration, persistence, and pace does not necessarily mean that she suffers from disabling restrictions. After all, "the spectrum of limitation that may constitute 'moderate' limitation ranges from limitations that may be close to 'marked' in severity to limitations that may be close to the 'mild' level." Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01. "The regulations also note that people with 'moderate' limitations may or may not qualify as disabled—a question that will be assessed in the residual functional capacity determination." *Moy v. Bisignano*, 142 F.4th 546, 555 (7th Cir. 2025). "The Agency's guidance makes clear that 'moderate' impairments should be considered when an ALJ calculates the claimant's residual ability to work" and "[t]o enable meaningful review, the ALJ must at least describe what the moderate limitations are and how they affect the claimant's ability to work." *Id*. Yet, the RFC fails to

provide an accurate account of how Ms. Sanders's moderate limitations in concentration, persistence, and pace affect her ability to work.

In countering Ms. Sanders's arguments, the Commissioner largely parrots the ALJ's reasoning and insists, by citing the same exhibits relied upon by the ALJ, that Ms. Sanders's examinations reflected intact and normal concentration. (Def.'s Resp. Br., DE 20 at 17.) The Commissioner also reiterates that "Dr. Kadlec found after a consultative examination that she would have few problems concentrating and persisting on her job duties." (*Id*.) In addition, the Commissioner argues that Ms. Sanders has not identified "any additional limitations that the record compelled." (*Id*. at 18.) The Court has addressed the Commissioner's first two contentions and will not repeat itself. It's worth adding, though, that to the extent that the Commissioner implies that the limitations were mild, they should still have been accounted for in the RFC. *See Diaz v. Berryhill*, No. 2:17-CV-314, 2018 WL 4627218, at *6 (N.D. Ind. Sept. 27, 2018) ("'[I]f the ALJ believed that the mild limitations [the four areas of mental functioning] did not merit a non-exertional limitation in the RFC, she was obligated to explain that conclusion so that the court can follow the basis of her reasoning.'") (quoting *Muzzarelli v. Astrue*, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011)); *see also Colleen G. v. Kijakazi*, No. 23 C 357, 2024 WL 216666, at *10 (N.D. Ill. Jan. 19, 2024) (remanding because the court could not tell what effect plaintiff's mild limitations would have on her work performance). As for the Commissioner's argument that Ms. Sanders must identify additional limitations, Ms. Sanders need not cross that threshold until the Commissioner explains why the moderate limitations that the ALJ herself endorsed—in concentration, persistence, and pace—were not accounted for in the RFC.

The Seventh Circuit makes few exceptions for the requirement that all the claimant's limitations be included in the RFC so that the VE can base her consideration about the available

jobs on the basis of what the claimant can and can't do. Such cases do exist but their reach is very narrow. For example, the Seventh Circuit has allowed the RFC to stand "when a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work." *O'Connor-Spinner*, 627 F.3d at 619 (citing *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002); *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007); and *Sims v. Barnhart*, 309 F.3d 424, 427, 431–32 (7th Cir. 2002)). Similarly, the court allowed an RFC where, "although the limitations on concentration, persistence and pace were not mentioned in the hypothetical, the underlying conditions were." *Id*. at 620 (citing *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009)). Finally, in *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021), the court upheld an ALJ's decision where the ALJ "justified the conclusion that the claimant could work at a consistent pace by expressly incorporating the doctor's recommendation that the claimant engage in only simple, repetitive tasks (which, according to the doctor, accounted for the claimant's pace-related limitations)." *Moy*, 142 F.4th at 555. But none of these scenarios apply here, given that nothing in the RFC can be read as a substitute for moderate limitations in concentration, persistence, and pace.

In summary, the Court finds that the ALJ failed to incorporate moderate limitations in concentration, persistence, and pace into the RFC. As a result, remand is required. And since the case is being remanded, the Court need not address Ms. Sanders's other arguments, although she may raise them before the ALJ. This is especially true because the ALJ will need to re-evaluate the accuracy of her assessment of the record. Also, if still applicable upon reconsideration, the ALJ should explain why Ms. Sanders is able to interact frequently with supervisors and coworkers, even though her interactions with the public are limited to occasional occurrences.

While the ALJ noted that Ms. Sanders remains capable of social interactions,[5] she did not provide a reason why interaction with supervisors and coworkers should be less restricted than her interactions with the public. This clarification seems especially important given that the ALJ found "somewhat persuasive" the opinion of Dr. Kadlec, who, among other things, opined that Ms. Sanders "will likely struggle to get along with her supervisors and coworkers due to her mental health issues." (ALJ's Decision, R. at 31.)

### E.  Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: September 30, 2025

/s/ JON E. DEGUILIO
Judge
United States District Court

---

[5] The ALJ stated:
Although [Ms. Sanders] did have one episode where she went to the ER for mental health issues, she was not admitted and outpatient records note she has had some stabilization to her symptoms. She has had some continued issues with panic and not wanting to leave her house, but these are less frequent and neither consultative examiner noted any such concerns with behavior. Such evidence supports the conclusion that the claimant can frequently interact with coworkers and supervisors, and occasional interact with the public.
(ALJ's Decision, R. at 29.)